## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EFG BANK AG, CAYMAN BRANCH, *et al.*, | |
| *Plaintiffs*, | CIVIL ACTION NO. 17-02592 |
| v. | |
| LINCOLN NATIONAL LIFE INS. CO., | |
| *Defendant*. | |

**PAPPERT, J.**                                    **September 22, 2017**

### MEMORANDUM

Plaintiffs[1] are owners of JPF Legend 300 and JPF Legend 400 life insurance policies. Among other things, Plaintiffs challenge a Cost of Insurance ("COI") rate increase imposed on certain policyholders by Lincoln National Life Insurance Co. ("Lincoln"). The Policies give Lincoln discretion to determine the COI rate based on its expectation of future mortality, interest, expenses, and lapses. In September 2016, Lincoln announced that it was raising the COI rate on certain life insurance policies. Plaintiffs contend Lincoln failed to apply the changes uniformly to policyholders in the same rate class as required by the Policies and based the COI increase on impermissible factors.

---

[1] Among the Plaintiffs are Wells Fargo, a security intermediary for Plaintiff EFG Bank AG; DLP Master Trust; DLP Master Trust II; DLP Master Trust III; GWG DLP Master Trust; Greenwich Settlements Master Trust and Palm Beach Settlement Company. The EFG Policies were issued in California and Georgia. The other Policies ("EAA Policies") were issued and delivered in Arizona, California, Florida, Illinois, Massachusetts, North Carolina, New Jersey, and Wisconsin. (Sec. Am. Compl. ¶¶ 20–29.)

Plaintiffs filed suit in the United States District Court for the Central District of California.  On June 8, 2017, the court ordered that the case be transferred to the United States District Court for the Eastern District of Pennsylvania.  (ECF No. 1.)  On July 11, 2017, Plaintiffs filed a Second Amended Complaint alleging claims for (1) breach of contract; (2) contractual breach of implied covenant of good faith and fair dealing; (3) tortious breach of implied covenant of good faith and fair dealing; and (4) declaratory relief.  (ECF No. 7.)  On August 9, 2017, Lincoln filed a Motion to Dismiss the Second Amended Complaint. (ECF No. 18.)  Plaintiffs responded on August 23, (ECF No. 20), and Lincoln replied on August 30, 2017, (ECF No. 23).  For the reasons below, the Court grants the motion in part and denies it in part.

## I.

### A.

Plaintiffs are all owners of flexible premium universal life insurance policies ("the Policies"[2]) issued between 2003 and 2005 by Jefferson-Pilot Life Insurance Company, which was later acquired by Lincoln. (Sec. Am. Compl. ¶¶ 4–5, 28, 29.) Universal life insurance has an insurance component and a savings component.  (*Id.* ¶ 5.)  The Policies differ from whole life insurance in that the policyholders choose the amount of their premium payments. (*Id.* ¶¶ 6–7.)  The policyholder can decide to pay just enough to cover the risk of death or they can pay more to build up cash that earns tax-deferred interest.  (*Id.*.)  The policyholder must contribute enough to cover monthly charges which include the cost of insurance as well as other policy charges; otherwise the policy will enter a grace period and lapse unless additional premiums are paid.  (*Id.*

---

[2]      Though Plaintiffs do not all own the same policy, the various policies owned by Plaintiffs all contain the same language at issue and were all subject to the COI increase.  (Sec. Am. Compl. ¶¶ 33, 35–36.)

¶ 8.)  If the policyholder contributes more than is needed to cover the monthly charges, the Policies provide that the balance, which is obtained when the policyholder pays in excess of the cost of insurance and other charges, will accrue interest at no lower than a guaranteed rate of four percent (4%).  (*Id.* ¶ 63.)

According to Plaintiffs, the "largest and most significant charge" under their Policies is the COI, which reflects the price Lincoln charges to cover the risk of the insured's death.  (*Id.* ¶ 31.)  The Policies provide, in relevant part:

> **Cost of Insurance**      The cost of insurance is determined on a monthly basis as the cost of insurance rate for the month multiplied by the number of thousands of net amount at risk for the month. The net amount at risk for a month is computed as (1) minus (2) where
>
> (1) is the death benefit for the month before reduction for any indebtedness, discounted to the beginning of the month at the guaranteed rate.
>
> (2) is the policy value at the beginning of the month.
>
> . . .
>
> **Cost of Insurance Rates**      The monthly cost of insurance rates are determined by us. Rates will be based on our expectation of future mortality, interest, expenses, and lapses. Any change in the monthly cost of insurance rates used will be on a uniform basis for insureds of the same rate class. Rates will never be larger than the maximum rates shown on page 11. The maximum rates are based on the mortality table shown on page 4.

(Policy, at 8, ECF No. 7-2); (Policy, at 8, ECF No. 7-6).

## B.

In September 2016, Lincoln sent Notice Letters to policyholders informing them that Lincoln was raising the COI rate on certain life insurance policies.  (*Id.* ¶ 35); (Notice, ECF No.7-5); (Notice, ECF No. 7-6.)  In relevant part, the notice states:

We are operating in a challenging and changing environment as we continue to face nearly a decade of persistently low interest rates, including recent historic lows, and volatile financial markets. Prudent management of our business and monitoring of the external environment have been crucial to Lincoln's 110-year track record of helping people secure their financial futures, and remains so today. This includes making fair and responsible adjustments as necessary and appropriate to ensure we are providing value to our customers while operating responsibly for the long-term.

(Notice, at 2.)

The Notice also contains a "FAQ" section:

**1. Why are Cost of Insurance (COI) rates changing on my policy and what does that mean?**

Cost of Insurance (COI) rates are based on certain cost factors, including mortality, interest, expenses and lapses. Our future expectations for these cost factors have changes therefore policy COI rates have been adjusted to appropriately reflect those future expectations.

. . .

**3. How much are the COI rates changing?**

The amount of the COI rate change depends upon the product, underwriting class and duration. In no instance will the revised COI rates exceed the guaranteed maximum COI rates indicated in the policy. The best way to learn how COI charges will impact policy performance is to request an inforce illustration.

(Notice, at 3.)

Plaintiffs allege that Lincoln made statements on its website, directed to agents and brokers, that the rate increase was based on "material changes in future expectations of key cost factors associated with providing this coverage, including: [l]ower investment as a result of continued low interest rates[;] [u]pdated mortality assumptions, including instances of both higher and lower

expected mortality rates versus prior expectations[; and] [u]pdated expenses, including higher reinsurance rates.  (Sec. Am. Compl. ¶ 39.)

Plaintiffs allege that the range of the increase since then has generally been between 60% and 70%, with some as low as 40% and one as high as 190%.  (*Id.* ¶ 36.) Plaintiffs requested additional information from Lincoln regarding the bases for the rate increase.  (*Id.* ¶ 40–41.)  Plaintiffs allege that Lincoln breached the Policies because the rate increase was not on a uniform basis for Insureds of the same rate class and it was not based on the enumerated factors listed in the Policies.  (*Id.* ¶ 44.) Plaintiffs contend that Lincoln  increased the rate to "circumvent the guaranteed interest rate."  (*Id.*)

## II.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  The complaint must be construed "in the light most favorable to the non-moving party." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

## III.

The United States District Court for the Central District of California transferred this case to the United States District Court for the Eastern District of Pennsylvania pursuant to the "first to file rule" and 28 U.S.C. § 1404(a). (Order, 3–6, June 8, 2017, ECF No. 1.) For cases transferred pursuant to 28 U.S.C. § 1404(a), the transferee court must "apply the state law that would have been applied if there had been no change of venue." *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).

In diversity cases, "a federal court must apply the choice of law rules of the forum state." *KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 915 (9th Cir. 1987) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). California utilizes the "governmental interest" choice of law approach, a three step analysis under which the court examines: (1) whether the laws of potentially concerned states materially differ from the law of California, (2) if the laws are materially different, if any of the states have an interest in having its own law applied, (3) if "each state has an interest in having its own law applied, [which states] interests would be more impaired if its law was not applied." *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919–20 (2001) (citation omitted). At step three, the court must determine "the relative commitment of the respective states to the laws involved and consider the history and current status of the states' laws and the function and purpose of those laws." *Id.* (citation omitted).

## IV.

In Count One, Plaintiffs assert as to each Policy a claim for breach of contract. (Sec. Am. Compl. ¶¶ 66–70.) The Policies were issued in Arizona, California, Florida,

Georgia, Illinois, Massachusetts, New Jersey, North Carolina, and Wisconsin. (Sec. Am. Compl. ¶¶ 28–29.) There is no material difference in the law for a breach of contract claim between any of the potentially concerned states and the Court will apply California law.[3]

### A.

To state a claim for breach of contract under California law, a plaintiff must allege the existence of a contract, plaintiff's performance or excuse for nonperformance, defendant's breach, and damage to the plaintiff. *Wall St. Network, Ltd. v. New York Times Co.*, 80 Cal. Rptr. 3d 6, 12 (Cal. Ct. App. 2008). Plaintiffs contend that the Policies are binding and enforceable contracts, Plaintiffs performed all of their obligations under the Policies, Lincoln breached the Policies, and Plaintiffs suffered damages in excess of $75,000. (Sec. Am. Compl. ¶¶ 67–70.) Plaintiffs contend that Lincoln breached the Policies terms "by increasing the cost of insurance rates on a basis that is not uniform for insureds of the same rate class," by basing it on impermissible factors in an attempt to circumvent the "guaranteed minimum interest rate," and "by imposing excessive cost of insurance rates." (*Id.* ¶ 68.) The Court will address each theory in turn.

---

[3]     The standard elements for a breach of contract claim all of the potentially concerned states include allegations of: (1) the existence of a contract, (2) defendant's breach, and (3) damage to the plaintiff. *See Steinberger v. McVey ex rel. Cty. of Maricopa*, 318 P.3d 419, 434 (Ariz. Ct. App. 2014); *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. Dist. Ct. App. 2008); *Roberts v. JP Morgan Chase Bank, Nat'l Ass'n*, 802 S.E.2d 880 (Ga. Ct. App. 2017); *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985); *Becker v. Graber Builders, Inc.*, 561 S.E.2d 905, 909 (N. C. Ct. App. 2002); *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999); *Management Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 557 N.W.2d 67, 75–78 (Wis. 1996). California, Illinois, and Massachusetts also require the plaintiff to demonstrate that the plaintiff performed under the contract or had a valid excuse for nonperformance. *See Wall St. Network, Ltd. v. New York Times Co.*, 80 Cal. Rptr. 3d 6, 12 (Cal. Ct. App. 2008); *Gore v. Indiana Ins. Co.*, 876 N.E.2d 156, 161 (Ill. App. Ct. 2007); *Bulwer v. Mount Auburn Hosp.*, 46 N.E.3d 24, 39 (Mass. 2016).

**i.**

Plaintiffs first contend that Lincoln's rate increase violated the Policy because it was not on "on a uniform basis for Insureds of the same rate class." (*Id.* ¶ 45.) Plaintiffs rely on the Frequently Asked Questions ("FAQ") section of Lincoln's Notice Letter which states that "the amount of the COI rate change depends upon the product, underwriting class and **duration**." (*Id.*, Ex. 5.) (emphasis added) Plaintiffs argue that this means that a rate increase must be the same for all parties within a rate class, not just for those with the same policy duration. (Pl. Opp. at 8.) Lincoln argues that this does not "allege a lack of uniformity:" "For example, if a male nonsmoker (a rate class) whose L300 policy was in its 15th year in October 2016 received a 23% increase for that year, that change will apply uniformly if another male nonsmoker, whose L300 policy was in its 10th year in October 2016, will receive a 23% increase under the new COI rates when his policy is in its 15th year." (Def. Mem. at 4–5.)

Under California law, the Court must "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995), *as modified on denial of reh'g* (Oct. 26, 1995). Drawing inferences in the light most favorable to Plaintiffs as the Court must at this stage, these allegations are sufficient to state a claim. The parties provide different explanations for their understanding of the Policy terms. The Court cannot say at this point that Plaintiffs' understanding is not one that a lay person would have of the Policy.

**ii.**

The Policies expressly limit the grounds upon which Lincoln can raise COI rates to Lincoln's "expectation of future mortality, interest, expenses, and lapses." (Sec. Am. Compl. ¶ 46.) Plaintiffs contend that Lincoln increased the COI rate using impermissible factors. (*Id.* ¶¶ 35, 39). *See, e.g.*, *Yue v. Conseco Life Ins. Co.*, No. 08-1506, 2011 WL 210943, at *7 (C.D. Cal. Jan. 19, 2011) (where policy specified that the COI rate would be determined based on insurer's expectation as to future mortality experience, insurer breached by considering non-enumerated factors).

Plaintiffs point to the Notice Letters sent by Lincoln to its insureds. Plaintiffs admit that Lincoln included the proper list of enumerated factors in its Notice Letters but point to additional wording in the Notices which states that an increase in the COI is necessary because Defendant was "operating in a challenging and changing environment as we continue to face nearly a decade of persistently low interest rates, including recent history lows, and volatile financial markets." (*Id.* ¶¶ 35, 37, Notice Letters, Exs. 5, 6). Plaintiffs also allege that statements were made to brokers and agents that indicated the COI increase was based on "material changes in future expectations of key cost factors associated with providing this coverage, including: [l]ower investment income as a result of a continued low interst rates[;] [u]pdated mortality assumptions, including instances of both higher and lower expected mortality rates versus prior expectations[; and] [u]pdated expenses, including higher reinsurance rates." (*Id.* ¶ 39.) Construing these allegations in the light most favorable to Plaintiffs, some of Lincoln's statements can be read as suggesting that Lincoln based the COI rate increase on impermissible factors, such as past low interest rates and resulting losses.

Combined with the especially large magnitude of the COI rate increase, (*Id.* ¶ 36), Lincoln's statements "nudge [Plaintiffs'] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. *See DCD Partners, LLC. v. Transamerica Life Ins. Co.*, No. 2:15-cv-03238-CAS, 2015 WL 5050513, at *6 (C.D. Cal. Aug. 24, 2015) (allegation that insurer increased COI rate by massive amount was sufficient to make it plausible that insurer breached by considering impermissible factors); *Feller v. Transamerica Life Ins. Co.*, No. 2:16-cv-01378-CAS, 2016 WL 6602561, at *10 (C.D. Cal. Nov. 8, 2016) (allegation that insurer raised COI rate to recoup past losses plausible where insurer suffered significant losses on subject policies due to their high guaranteed interest rate).

### iii.

Plaintiffs allege that mortality has improved nationwide since the Policies were issued and is expected to continue improving. (*Id.* ¶ 48–49.) They call into question Lincoln's expectations as to mortality and interest because the change in mortality "would support a ***decrease***, not increase, in cost of insurance rates." (*Id.* ¶ 50.) Lincoln responds that the Policies permit the COI rates to be adjusted based on changes in Lincoln's "expectations regarding future mortality of its insureds from what the prior expectations were" and thus the inquiry is not whether mortality in general has improved. (Def. Mem. at 6.) Lincoln explains that if the improvement in mortality was anticipated under the prior expectations, then an improvement in the general population mortality would not support a decrease. (*Id.*)

Lincoln's objections with respect to the mortality factor do not render Plaintiffs' claim facially deficient. Although an "improvement in mortality will not bar a COI

increase if that improvement was *less* than what was previously anticipated" with mortality trends, (Def. Mem. at 6), it remains to be seen if expectations with respect to this factor have changed so significantly to support an increase of the magnitude alleged.

**iv.**

Plaintiffs contend that the interest factor upon which Lincoln purported to base the COI increase can only include "the interest that Lincoln earns (or expects to earn) on its profits from providing insurance, and not on funds in policyholders' accounts." (*Id.* ¶ 54.) Plaintiffs explain that although an insurance company can earn interest on the mortality and savings component, when determining the cost of insurance, "it can only consider interest on the mortality component." (*Id.* ¶ 55.) Lincoln claims that Plaintiffs are mistaken that "interest" cannot include interest earned through investment of funds in the policyholder accounts and that there is "no support in the policy terms" for construing the definition of interest in such a confined manner. (Def. Mem. at 9–10.) In response, Plaintiffs contend that their understanding of "interest" is "consistent with the context and surrounding language in which the term is used." (Pls. Opp. at 11); *See also Bank of the W. v. Superior Court*, 833 P.2d 545, 552 (Cal. 1992). At this stage, Plaintiffs' interpretation of the interest factor as it relates to an increase in the COI is not implausible.

**v.**

In its Motion, Lincoln argues that Plaintiffs, when analyzing the COI adjustment, ignored the "future expenses" component, which Lincoln argues includes "reinsurance costs." (Def. Mot. at 5.) Plaintiffs respond that reinsurance costs are not a

proper basis for raising COI rates and argue that "[a]t most, the term 'expenses' is ambiguous as to whether it refers to reinsurance." (Pls. Opp. at 8–9.) Again, at this stage, it is not implausible that the provision permitting Lincoln to consider future "expenses" for the COI calculus would not include reinsurance costs.

### vi.

Plaintiffs claim that Lincoln breached the Policies' terms "[b]y imposing excessive costs of insurance rates." (Sec. Am. Compl. ¶ 68.) Lincoln argues that the allegation is deficient because Plaintiffs do not cite a "metric by which the new COI rates can be adjudged 'excessive.'" (Def. Mem. at 11.) Lincoln also claims the Policies establish a maximum rate that Lincoln may charge and Plaintiffs did not allege that the new COI rate exceeded that maximum rate. (*Id.*) Lincoln has the better of this argument but that does not preclude Plaintiffs from having stated, overall, a breach of contract claim.

### V.

In Count Two, Plaintiffs allege breach of the implied covenant of good faith and fair dealing and contend that Lincoln's breaches were "conscious [and] deliberate" and "were designed to and which did unfairly frustrate the agreed common purposes of the Plaintiff Policies and which disappointed Plaintiffs' reasonable expectations by denying Plaintiffs the benefits of [their] Policies." (Sec. Am. Compl. ¶ 76.) Again, under California's governmental interest choice of law approach, the Court must determine whether the laws of potentially concerned states materially differ from California law. There is no material difference in the law for a breach of contract claim between any of

the states where the Policies were issued.[4]  Under each state's law a claim for a

contractual breach of the implied covenant of good faith and fair dealing cannot be

duplicative of an underlying claim of breach of contract.[5]  Lincoln argues that

Pennsylvania is a potentially concerned state because its headquarters are in

Pennsylvania.  Under Pennsylvania law, there is no "independent cause of action for a

breach of the covenant of good faith and fair dealing—arising in contract—[ ] because

such a breach is merely a breach of contract." *Zaloga v. Provident Life & Acc. Ins. Co.

of Am.*, 671 F. Supp. 2d 623, 631 (M.D. Pa. 2009) (citing *Birth Ctr. v. St. Paul

Companies, Inc.*, 787 A.2d 376, 385–86 (Pa. 2001)).  Because there is a conflict, the

Court must move to the second step of the conflict of law analysis.

The second consideration is whether any of the concerned states have an interest

in applying their law.  *Washington Mut.*, at 919.  When conducting a choice of law

analysis in a contract case, courts examine the factors under the Restatement (Second)

of Conflict of Laws: the place of contracting, negotiation, performance, the location of

the subject matter of the contract, and the domicile, residence, nationality, place of

incorporation, and place of business of the parties.  *Robert McMullan & Son, Inc. v.*

---

[4]    This claim only applies for policies issued in Arizona, California, Florida, Massachusetts, New Jersey, North Carolina and Wisconsin.  Plaintiffs did not assert a claim for the policies issued in Illinois.  Plaintiffs withdrew the claim for the policies issued in Georgia.  (Pls. Opp. at 15 n. 7.)

[5]    *See Aspect Sys., Inc. v. Lam Research Corp.*, No. 06-1620, 2006 WL 2683642, at *3 (D. Ariz. Sept. 16, 2006); *Bionghi v. Metro. Water Dist. of So. Cal.*, 83 Cal. Rptr. 2d 388, 396 (Cal. Ct. App. 1999); *Alhassid v. Bank of Am., N.A.*, 2015 WL 11110557, at *8 (S.D. Fla. Nov. 4, 2015); *Brand Grp. Int'l, LLC v. Established Brands Int'l, Inc.*, 2011 WL 3236078, at *3 (D. Mass. July 26, 2011); *Hahn v. OnBoard LLC*, 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009); *BioSignia, Inc. v. Life Line Screening of Am., Ltd.*, 2014 WL 2968139, at *5 (M.D.N.C. July 1, 2014); *Non Typical Inc. v. Transglobal Logistics Int'l, Inc.*, 2011 WL 1792927, at *6 (E.D. Wis. May 11, 2011).

*United States Fid. & Guar. Co.*, 103 Cal. App. 3d 198, 205 (Cal. Ct. App. 1980). In

*McMullan*, the court relied heavily on the place of issuance and delivery of the contract.

*Id.* The court acknowledged the defendant's place of incorporation when conducting its

choice of law analysis but because the defendant "knowingly dealt with residents of the

various states and voluntarily subjected itself to the contract laws of those states" it

was not given much weight. *Id.* In this case, Plaintiffs assert a breach of the Policies

issued in numerous states, none of whose laws conflict. (Sec. Am. Compl. ¶¶ 71–77.)

Lincoln is incorporated in Indiana, with its principal place of business in Pennsylvania.

(*Id.* ¶ 27.) Because the Policies were issued and delivered in California (and the other

states that do not have a conflict with California's law) and the only connection to

Pennsylvania is that it is Lincoln's principal place of business, California has an

interest in having its law applied.[6] The Court will apply California law to the breach of

implied covenant of good faith and fair dealing claim.

### A.

A claim for a breach of the covenant of good faith and fair dealing must go

beyond merely restating a contractual breach. *Bionghi v. Metro. Water Dist. of So.*

*California*, 70 Cal. App. 4th 1358, 1370 (Cal. Ct. App. 1999). Lincoln contends that

---

[6]     Additionally, under California Civil Code Section 1646, interpretation of a contract should be done "according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. "Under California law, a contract is made in the place of acceptance." *Store Kraft Mfg. v. Wausau Bus. Ins. Co.*, 2014 WL 12561603, at *6 (C.D. Cal. Mar. 24, 2014). In *Store Kraft Mfg.*, "because the polices at issue were delivered…in Nebraska and accepted there…Nebraska law governs their interpretation." *Id.* Here, because the Policies do not specify a place of performance, Plaintiff urges that the law where the contract was made should apply. (Pls. Opp. at 7.)

        In the order transferring this case, the District Court in California noted that "neither Plaintiffs nor Defendant are California citizens; and the subject matter of this litigation lacks any meaningful connection [to this] District." Order, 4, June 8, 2017, ECF No. 1.) As explained above, the state of the Policies' issuance and delivery is the interested state.

Plaintiffs' claim is duplicative of the breach of contract claim and cannot be brought as a separate cause of action. (Def. Mem. at 11.) Plaintiffs, however, make additional allegations in their claim for breach of the covenant of good faith and fair dealing. For example, they contend that Lincoln "materially breached the Plaintiff Policies in several respects, including, but not limited to, the following…[b]y attempting to force Plaintiffs either to (a) pay exorbitant premiums that Lincoln knows would no longer justify the ultimate death benefits or (b) lapse or surrender their policies, thereby forfeiting the premiums they have paid to date…" (Sec. Am. Compl. ¶ 74.) Plaintiffs contend that Lincoln's breaches were "conscious, deliberate" and were "designed to" and did "frustrate the agreed common purposes" of the Policies and denied them benefits of the policies. (*Id.* ¶ 75.)

While Lincoln is correct that California law does not recognize implied covenants based on breaches of express contract terms, California law does recognize an implied covenant of good faith where, as here, the defendant is expressly given a constrained amount of discretion under the Policy. *See McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 956 (N.D. Cal. 2012) ("[W]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing."); *Feller*, 2016 WL 6602561, at *12 ("Plaintiffs allege more than a mere breach of contract. Plaintiffs allege that defendant used its discretion over MDRs in bad faith to wrongfully induce forfeiture of death benefits among elderly policyholders. Although the two claims share many of the same predicate allegations, plaintiffs' allege that [Defendant] used its, allegedly limited, discretion over the MDR in bad faith rather than merely in violation

of the contract's express terms. Accordingly, plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is not duplicative.").

Plaintiffs have adequately alleged that Lincoln breached the implied covenant by exercising its limited discretion under the Policies in an unreasonable and unfair manner with the bad faith intent of inducing lapses, frustrating policyholders' expectations and depriving them of the benefit of the agreement.[7] *See, e.g.*, *Feller*, 2016 WL 6602561, at *11–12 (upholding claim on same or similar theories); *DCD*, 2015 WL 5050513, at *7–8 (same).

## VI.

In Count Three, Plaintiffs assert a claim for tortious breach of the implied covenant of good faith and fair dealing with respect to the Polices issued in California. Again, under California's governmental interest choice of law approach, the Court must determine whether the law of potentially concerned states differs materially from California law. Plaintiffs argue that California is the only potentially concerned state because the Policies were issued in California to California residents. (Pl. Resp. in Opp., at 18.) Lincoln considers Pennsylvania a potentially concerned state because it maintains its principal place of business here. (Def. Mot. at 12.)

Pennsylvania does not recognize a tort for breach of the implied covenant of good faith and fair dealing. *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 198–200 (Pa. 2007). Lincoln argues that California only recognizes a tort for breach of the implied covenant of good faith and fair dealing when an insurer improperly withholds insurance benefits due under a policy. (Def. Mot. at 19.) Specifically, Lincoln cites to *Adams v. United of*

---

[7] Lincoln contends that punitive damages are not available for a contractual breach of the implied covenant of good faith and fair dealing. Plaintiffs have withdrawn their prayer for punitive damages for this claim. *See* Pls. Opp. at 15 n.7.

*Omaha Life Ins. Co.*, 2013 WL 12114060, at *3 (C.D. Cal. Aug. 14, 2013), where the court dismissed a claim for a breach of the implied covenant of good faith and fair dealing because "there is no cause of action for breach of the covenant…when no benefits are due." *See also Progressive W. Ins. Co. v. Yolo Cty. Superior Court*, 37 Cal. Rptr. 3d 434, 447 (Cal. 2005) ("Because the essence of the tort of the implied covenant of good faith and fair dealing is focused on the prompt payment of benefits due under the insurance policy, there is no cause of action for breach of the covenant of good faith and fair dealing when no benefits are due."). In some instances, however, California courts have denied motions to dismiss tort claims asserting a breach of the covenant of good faith and fair dealing. In those cases, plaintiffs alleged that defendants tortuously increased a monthly deduction rate (MDR), affecting the accumulated value of the plaintiffs' accounts and precluding them from earning interest on the deducted amounts, a policy benefit. *See Feller v. Transamerica Life Ins. Co.*, No. 2:16-cv-01378-CAS, 2016 WL 6602561, at *12–13 (C.D. Cal. Nov. 8, 2016); *DCD Partners, LLC. v. Transamerica Life Ins. Co.*, No. 2:15-cv-03238-CAS, 2015 WL 5050513, at *8–9 (C.D. Cal. Aug. 24, 2015). In instances where plaintiffs allege that they failed to receive a benefit under their policy, courts have held that plaintiffs have stated a plausible claim for tortious breach of the implied covenant of good faith. *See Feller*, 2016 WL 6602561, at *12–13*; DCD Partners,* 2015 WL 5050513, at *8–9. Because there is a material difference between Pennsylvania and California law, the Court must proceed to step two of the choice of law analysis.

The second consideration is whether either of the concerned states have an interest in applying their law. *Washington Mut.*, at 919. For the same reasons

discussed *supra* Section V, the Court will apply California law for the claim of a tortious breach of the implied covenant of good faith and fair dealing.

## A.

To state a claim for a tortious breach of the implied covenant of good faith and fair dealing, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding the benefits must have been unreasonable or without proper cause. *Love v. Fire Ins. Exch.,* 271 Cal. Rptr. 246, 254 (Cal. Ct. App. 1990). In *Feller v. Transamerica Life Ins. Co.*, the plaintiffs owned universal life insurance policies. 2016 WL 6602561, at * 1. The policies were subject to a monthly deduction rate (MDR), which the defendant significantly increased. *Id*. at *13. Monthly deductions were drawn from the accumulated value of their accounts to fund the MDR increase. As a result, their accounts accrued interest on a smaller sum of money. *Id*. The court determined that the plaintiffs stated a claim for a tortious breach of duty of good faith and fair dealing. *Id*.

Here, Plaintiffs' universal life insurance policies consist of two components: "(1) the life insurance component, for which the insurance company charges a cost to cover the risk of the insured's death (the "cost of insurance"); and (2) a savings component, where premiums paid in excess of the cost of insurance (and certain other policy charges) accumulate and earn interest at a rate that will not be lower than a minimum "guaranteed interest rate"…" (Sec. Am. Compl. ¶ 5.) The policies remain in force as long as there are sufficient funds in the account to cover monthly charges (which include the cost of insurance charge) and any remaining balance accrues interest. (*Id*. ¶ 30.) Plaintiffs specifically allege that "[b]y charging excessive cost of insurance rates

[the defendant denied] Plaintiffs the benefit of their actual Policy Values." (*Id.* ¶ 81.) Plaintiffs allegations that Lincoln relied on factors other than those enumerated in the Policies, contributing to Lincoln denying them policy benefits, are sufficient to state a claim. (*Id.* ¶¶ 52, 78, 83.)

B.

Plaintiffs seek punitive damages for Lincoln's alleged tortious breach of the implied covenant of good faith and fair dealing. While punitive damages should not be granted in actions based on breach of contract, they may be recovered in a tort action…even though the tort incidentally involves a breach of contract. *See Crogan v. Metz*, 47 Cal. 2d 398, 405 (Cal. 1956); *Chelini v. Nieri*, 32 Cal. 2d 480, 486–87 (Cal. 1948). California courts have recognized that in the context of insurance contracts, a "breach of the implied covenant will provide the basis for an action in tort." *Foley v. Interactive Data Corp.*, 765 P.2d 373, 390 (Cal. 1988). Because of the "special relationship between the insurer and the insured" it is possible to receive exemplary damages for a tortious breach of the implied covenant of good faith and fair dealing. *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 820 (Cal. 1979). To recover punitive damages, the defendant must be "guilty of oppression, fraud, or malice, express, or implied." *Id.* (citing CAL. CIV. CODE § 3294.)

Here, Plaintiffs allege that Lincoln is forcing Plaintiffs to "pay exorbitant premiums that Lincoln knows would no longer justify the ultimate death benefits" or "lapse or surrender their Policies and forfeit the premiums they have paid to date, thereby depriving policyholders of the benefits of their Policies." (Compl. ¶ 14.) They further contend that Lincoln's "breaches were conscious and deliberate acts, which were

designed to…frustrate the agreed common purposes of the Plaintiff Policies" and that

Lincoln was trying to circumvent the guaranteed minimum interest rate (Sec. Am.

Compl. ¶¶ 83, 64–65.)  The Court will not dismiss the punitive damages claim at this

stage; Lincoln will have the opportunity to renew its argument at summary judgment.

## VII.

In Count Four, Plaintiffs seek a declaration that the increase of the cost of

insurance rates was improper under the Policies and a declaration that the Court set

forth "the specific guidelines that govern the factual circumstances under which

Defendant can raise the cost of insurance rates."  (*Id.* ¶ 87.)  Lincoln contends that

Plaintiffs' claim for declaratory relief should be dismissed because it is duplicative of

the breach of contract claim, would serve no purpose and is not ripe for review.  (Def.

Mem., at 23–24.)

Under the Declaratory Judgment Act, the Court "may," but is not required to,

"declare the rights and other legal relations of any interested party seeking such

declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

Courts have discretion when determining whether to entertain the claim.  *B & O Mfg.,

Inc. v. Home Depot U.S.A., Inc.*, 2007 WL 3232276, at * 7 (N.D. Cal. 2007).  If a claim is

"merely duplicative" dismissal is proper.  *Danny's Tustin at the Mkt. Place LLC v.

Greenwich Ins. Co.*, 2013 WL 12128814, at *7–8 (C.D. Cal. June 6, 2013) ("Plaintiffs'

claim for declaratory relief is essentially the same as their breach of contract claim"

because "a declaration of [d]efendant's obligations under the Policy is duplicative of the

issues that will already be determined through [p]laintiffs' breach of contract claim.").

In response to Lincoln's contention that the declaratory relief sought requires adjudication of precisely the same issues as Plaintiffs' breach of contract claim, Plaintiffs state that "[a] declaratory relief claim that seeks alternative relief is not duplicative of other claims even if it involves allegations that support plaintiff's other claims." (Pl. Reply, at 34.) The Court nevertheless fails to see how the Plaintiffs' claim is not duplicative of the resolution of the breach of contract claim. The Court therefore declines to exercise its discretionary jurisdiction and grants Defendant's Motion with respect to this claim.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.