# PLAINTIFFS' EXHIBIT B

## CONSULTING AGREEMENT

This Agreement is entered into between Milliman, Inc. (Milliman) and Greenberg Traurig (Client). Client has engaged Milliman to perform consulting services in order to assist and facilitate Client's provision of legal advice to Lincoln National Life Insurance Company (Company and collectively with Milliman and Client the Parties)). The terms and conditions of this Agreement shall apply to the services requested by Client arising from and related to the Scope of Work, set forth in Attachment A. The effective date of this engagement is June 10, 2016. For mutual consideration herein acknowledged, the Parties agree as follows:

1. CONFIDENTIAL INFORMATION. Any information received from Client or Lincoln by Milliman or from Milliman by Client or Company will be considered "Confidential Information." Company shall retain ownership of all Confidential Information received by Milliman from Client or Company. However, information received from Client or Company by Milliman will not be considered Confidential Information if (a) the information is or comes to be generally available to the public during the course of Milliman's work, (b) was independently developed by Milliman without resort to information from the Client or Company, or (c) Milliman appropriately receives the information from another source who is not under an obligation of confidentiality to Client or Company, unless Milliman has received such information from an entity or individual that Client or Company represents with respect to the Scope of Work. Milliman agrees that Confidential Information shall not be disclosed to any third party without express written consent of Client or Company. Milliman agrees to take all reasonable steps to ensure that circulation of Confidential Information within Milliman is confined to those persons with a need to know for purposes of this engagement. Upon termination of this agreement, Milliman agrees to return any Confidential Information, upon written request by the Client/ Company; provided however, that Milliman may retain one copy to comply with professional documentation requirements. Client agrees not to disclose Confidential Information to any third parties, except for Company and Company affiliates.

2. PRIVILEGE AND CONFIDENTIALITY. The Parties acknowledge and agree that all work performed by Milliman pursuant to this Agreement, including all communications between Milliman and the Client, whether written or oral, constitute confidential and privileged communications which may not be revealed to any other third party, except with the written authorization of Client, with the exceptions noted in paragraph number 1 above. Milliman acknowledges that all communications undertaken and work performed by Milliman pursuant to this Agreement is performed in reliance upon the privilege and at the direction of Client in performance of its legal services. Client and Company's specific intent is that Milliman's services, communications and work product under this Agreement be protected by the attorney/client privilege, the work produce doctrine and/or any applicable self-evaluative privilege to the maximum extent provided under federal law and applicable state law. Milliman will take all steps necessary, and as reasonably proscribed by Client, to ensure that Milliman's services, communications and work product remain privileged, including marking all documents produced under this Agreement "Privileged Attorney/Client Communication", or as otherwise determined by Client.

Plaintiffs' Exhibit B

3. **BILLING TERMS.** Company acknowledges the obligation to pay Milliman for services rendered, whether arising from Client's or Company's request or otherwise necessary as a result of this engagement, at Milliman's standard hourly billing rates for the personnel utilized plus all out-of-pocket expenses incurred. Milliman will bill Client periodically for services rendered and expenses incurred. Client shall promptly convey such bills to Company. All invoices are payable upon receipt. Milliman reserves the right to stop all work if any bill goes unpaid for 60 days. In the event of such termination, Milliman shall be entitled to collect the outstanding balance from the Company, as well as charges for all services and expenses incurred up to the date of termination. Milliman normally bills its clients on a time-and-expense basis. For this engagement, at your request and directed by the scope of work above, our hourly fees will range between ▇▇▇▇▇▇▇▇ per hour. In addition to fees for professional services, we will bill for direct out-of-pocket expenses (travel, lodging, and meals).

4. **TOOL DEVELOPMENT.** Milliman shall retain all rights, title and interest (including, without limitation, all copyrights, patents, service marks, trademarks, trade secret and other intellectual property rights) in and to all technical or internal designs, methods, ideas, concepts, know-how, techniques, generic documents and templates that have been previously developed by Milliman or developed during the course of the provision of the Services provided such generic documents or templates do not contain any Client Confidential Information or proprietary data. Rights and ownership by Milliman of original technical designs, methods, ideas, concepts, know-how, and techniques shall not extend to or include all or any part of Client's proprietary data or Client Confidential Information. To the extent that Milliman may include in the materials any pre-existing Milliman proprietary information or other protected Milliman materials, Milliman agrees that Client shall be deemed to have a fully paid up license to make copies of the Milliman owned materials as part of this engagement for its internal business purposes and provided that such materials cannot be modified or distributed outside the Client without the written permission of Milliman.

5. 

6. **DISPUTES.** In the event of any dispute arising out of or relating to the engagement of Milliman by Client (including a claim brought by Company against Milliman), the parties agree that the dispute will be resolved by final and binding arbitration under the Commercial Arbitration Rules of the American Arbitration Association. The arbitration shall take place before a panel of three arbitrators. Within 30 days of the

CONFIDENTIAL                                                                                                    LN_Consolidated_00070228

commencement of the arbitration, each party shall designate in writing a single neutral and independent arbitrator. The two arbitrators designated by the parties shall then select a third arbitrator. The arbitrators shall have a background in either insurance, actuarial science or law. The arbitrators shall have the authority to permit limited discovery, including depositions, prior to the arbitration hearing, and such discovery shall be conducted consistent with the Federal Rules of Civil Procedure. The arbitrators shall have no power or authority to award punitive or exemplary damages. The arbitrators may, in their discretion, award the cost of the arbitration, including reasonable attorney fees, to the prevailing party. Any award made may be confirmed in any court having jurisdiction. Any arbitration shall be confidential, and except as required by law, neither party may disclose the content or results of any arbitration hereunder without the prior written consent of the other parties, except that disclosure is permitted to a party's auditors and legal advisors.

7. **THIRD PARTY DISTRIBUTION.** Milliman's work is prepared solely for the internal business use of Client and Company. Milliman's work may not be provided to third parties, except those referenced and noted in paragraph number 1 above, without Milliman's prior written consent. Milliman does not intend to benefit any third party recipient of its work product, except Company as set forth in the Scope of Work, even if Milliman consents to the release of its work product to any other third party.

8. **INDEMNIFICATION.** Company agrees to indemnify and hold Milliman, its officers, directors, agents and employees, harmless from and against all loss, damages, liability, and Expense, with respect to the work in question where such loss, damages, liability or Expense was incurred by reason of any claims, actions, suits or governmental investigations or proceedings, brought by any third party against or involving Milliman, its officers, directors, agents and employees, which relate to or arise out of the engagement of Milliman under this Agreement. Provided, however, that Company shall not be required to indemnify Milliman, its officers, directors, agents and employees, for any damages determined by a court or an arbitration panel to have resulted from Milliman's intentional fraud or willful misconduct. For purposes of this paragraph, "Expense" shall include: all legal expenses incurred by Milliman in the investigation, defense or settlement of any claim, action, suit or proceeding, and all other reasonable costs and expenses, including the services of Milliman based on normal hourly rates, together with its out-of-pocket expenses, incurred in the investigation, defense or settlement of same.

9. **CHOICE OF LAW.** The construction, interpretation, and enforcement of this Agreement shall be governed by the substantive contract law of the State of New York without regard to its conflict of laws provisions. In the event any provision of this agreement is unenforceable as a matter of law, the remaining provisions will stay in full force and effect. In the event any provision of this agreement is unenforceable as a matter of law, the remaining provisions will stay in full force and effect.

[SIGNATURE PAGE FOLLOWS]

Plaintiffs' Exhibit B

CONFIDENTIAL

LN_Consolidated_00070229

The Parties hereto have executed this Agreement on the date above first written.

MILLIMAN, INC.

By: _____
Name: Craig W. Reynolds, FSA, MAAA
Title: Principal and Consulting Actuary

GREENBERG TRAURIG

By: _____
Name: Michael Berlin
Title: Shareholder

LINCOLN NATIONAL LIFE INSURANCE COMPANY

By: _____
Name: David Ramirrun
Title: AVP, Risk Management

Plaintiffs' Exhibit B

CONFIDENTIAL

LN_Consolidated_00070230

# ATTACHMENT A

## SCOPE OF SERVICES

Plaintiffs' Exhibit B

CONFIDENTIAL

LN_Consolidated_00070231



1301 5th Avenue
Suite 3800
Seattle, WA 98101
USA

Tel +1 206 624 7940
Fax +1 206 340 1380

milliman.com

June 10, 2016

Mr. Michael Berlin
Greenberg Traurig, LLP
MetLife Building
200 Park Avenue
New York, NY 10166

Dear Mr. Berlin:

This engagement letter documents the engagement of Milliman, Inc. ("Milliman", "we" or "us") by Greenberg Traurig, LLP ("Greenberg") on behalf of your client, Lincoln National Life Insurance Company ("Lincoln"), to provide you with MG-ALFA® model review and cost of insurance (COI) change support for Lincoln's Legend universal life block of business.

If this agreement meets your needs, please sign or have signed this letter and return it to us. Otherwise, please feel free to reach out directly to us to communicate any concerns. We require a signed letter before we can deliver any work product to you or to Lincoln.

Scope

Based on conversations with you and Lincoln, we understand that the purpose of this project is twofold – a model review and a COI repricing. Both of these objectives apply only to Lincoln's Legend series of universal life product offerings, which encompass around 10 – 12 products, none of which have material secondary guarantees.

Moreover, both objectives need to be completed by June 30.

- Model review: To perform an independent model review of the MG-ALFA model for the business in-scope, and

- COI repricing: To recommend changes to non-guaranteed elements (NGEs), specifically the change of cost of insurance (COI) rates.

ATTORNEY CLIENT PRIVILEGED COMMUNICATION

Offices in Principal Cities Worldwide

LFG_ModelValidationProposal-20160610.docx

Plaintiffs' Exhibit B



We anticipate that the model review and the COI repricing will involve at least the following tasks. Given the timeframe, we anticipate that many of these tasks will need to be performed concurrently, although of course the model review will be the first priority.

Model review



ATTORNEY CLIENT PRIVILEGED COMMUNICATION
Offices in Principal Cities Worldwide

Plaintiffs' Exhibit B
CONFIDENTIAL
LN_Consolidated_00070233



Mr. Michael Berlin
June 10, 2016
Page 3

To the extent that our review uncovers any material issues, we can work with Lincoln to remediate these. Our objective is to complete this phase by the end of next week to facilitate using the ensuing two weeks to develop new COIs. However, should we discover material problems with the extant model, this might endanger our ability to meet the proposed deadline. We will let Lincoln and you know as soon as possible if there is evidence that this is likely to occur.

COI repricing



ATTORNEY CLIENT PRIVILEGED COMMUNICATION
Offices in Principal Cities Worldwide

Plaintiffs' Exhibit B

CONFIDENTIAL
LN_Consolidated_00070234



Mr. Michael Berlin
June 10, 2016
Page 4

We propose to carry out the validation and preparation work essentially simultaneously for all products in scope. We will then carry out step two, the repricing, one product at a time.

### Staffing

Kelly Rabin and Craig Reynolds will manage this project. Other key members of our team are:

- Grace Chang, FSA, MAAA
- Kristen Dyson, FSA, MAAA
- Zohair Motiwalla, FSA, MAAA
- Jack Luo, ASA, MAAA
- Hitomi Abe, ASA, MAAA

We will utilize other staff as required to complete the project in a timely and cost effective manner. We anticipate using a resource from our New York office for peer review in order to ensure delivery of quality work product that is responsive to your needs.

### Cost

The cost of our services will be based on the consultants' time at our stated hourly rates, plus any reasonable out-of-pocket expenses incurred, with monthly invoices and payment expected upon receipt. Unpaid balances will accrue interest at the rate of 1.5% per month after 30 days. Our fees will be based on actual time charges and out of pocket expenses incurred.

Billing rates per hour for key members of the team are as follows:

- Craig Reynolds: 
- Kelly Rabin:
- Grace Chang:
- Kristen Dyson:
- Zohair Motiwalla:
- Jack Luo:
- Hitomi Abe:

ATTORNEY CLIENT PRIVILEGED COMMUNICATION
Offices in Principal Cities Worldwide

Plaintiffs' Exhibit B

CONFIDENTIAL LN_Consolidated_00070235

Case 2:17-cv-02592-GJP Document 62-2 Filed 02/08/19 Page 11 of 13



Mr. Michael Berlin
June 10, 2016
Page 5

███████████████████████████████████████████
████████████████████████████████ Documentation will follow in July.
We will provide status of fees incurred and, where appropriate, an updated cost estimate every Monday.

Timing

We understand that the work (sans documentation) must be completed by June 30 in order to allow all stakeholders at Lincoln sufficient time to implement (and communicate) the COI rate change on an effective date of October 1.

We are confident that we can meet the scope as outlined above within this timeframe. To that end, we have already:

- Started reviewing the files Lincoln sent us last week.

- Scheduled regular calls with Lincoln for Monday, Wednesday and Friday of each week at 6am Pacific / 9am Eastern. Going forward, we can reevaluate if the calls are useful as needed.

- Put together a question and answer spreadsheet log, which we will plan on sending Lincoln on a daily basis for their feedback. To the extent that is feasible, responses to these questions within one to two days of being posed would be appreciated in order to ensure that we can continue to make good progress.

We do note that meeting the timeframe is predicated on receiving timely responses from Lincoln regarding assumptions, product mechanics and anticipated methodology for the repricing as well as on the level of robustness of Lincoln's existing models and documentation.

We anticipate producing documentation that summarizes both the model review and the redetermination of the COI rates approximately 2-3 weeks after June 30.

ATTORNEY CLIENT PRIVILEGED COMMUNICATION
Offices in Principal Cities Worldwide

Plaintiffs' Exhibit B

CONFIDENTIAL                                                         LN_Consolidated_00070236



Mr. Michael Berlin
June 10, 2016
Page 6

Terms and Conditions

This engagement letter will be governed by the terms and conditions from the three party agreement between Milliman, Lincoln National Life Insurance Company, and Greenberg Traurig, LLP dated June 10, 2016.

\*   \*   \*   \*   \*

Thank you for giving us the opportunity to serve you in this capacity. We look forward to the opportunity to work with you. Please indicate your agreement to the project outline contained in this engagement letter by signing below and returning one copy of this letter to us for our file.

ATTORNEY CLIENT PRIVILEGED COMMUNICATION

Offices in Principal Cities Worldwide

Plaintiffs' Exhibit B

CONFIDENTIAL                                                                LN_Consolidated_00070237



Mr. Michael Berlin
June 10, 2016
Page 7

Sincerely,

*Craig W. Reynolds*

Craig W. Reynolds, FSA, MAAA
Principal & Consulting Actuary

*Kelly J. Rabin*

Kelly J. Rabin, FSA, CFA, MAAA
Consulting Actuary

Accepted for Greenberg Traurig, LLP:

*Michael Berlin*
(Signature)

Michael Berlin
(Name in print)

Shareholder
(Title)

6/14/16
(Date)

Lincoln National Life Insurance Company:

By: _____

Name: David Panetyan

Title: AVP, Risk Management

ATTORNEY CLIENT PRIVILEGED COMMUNICATION

Offices in Principal Cities Worldwide

Plaintiffs' Exhibit B

CONFIDENTIAL                                                                                                    LN_Consolidated_00070238