**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EFG BNK AG, CAYMAN BRANCH, et al, *Plaintiffs,* v. THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, *Defendant.* | CIVIL ACTION NO. 17-2592 |

**PAPPERT, J.**                                                                                                                    **March 25, 2022**

**<u>MEMORANDUM</u>**

Lincoln National Life Insurance Company moved to compel Plaintiffs to produce unredacted versions of thirteen "anti-fraud" memoranda contained in Plaintiffs' policy files. Plaintiffs opposed the motion, arguing that the memoranda were protected by the work product doctrine. The Special Master agreed, denying Lincoln's motion. Lincoln now raises several objections, including that no one has standing to claim the memoranda are protected work product in this case. For the reasons below, the Court declines to adopt the Special Master's Opinion and orders production of the memoranda.[1]

I

A

The subject memoranda come from Plaintiffs' policy files. *See* (Decl. Erin M. Culbertson ("Culbertson Decl.") ¶ 2, ECF 161-6); (Def. Ex. 3, EFG/EAA Policy Chart, ECF 161-6 at 13). They concern life insurance policies that were subject to the cost-of-

---

[1] The Court reviews the Special Master's findings of fact and conclusions of law de novo. See Fed. R. Civ. P. 53(f)(3), (4).

1

insurance adjustments Plaintiffs now challenge. (Op. & Order Special Master ("Op. & Order") at 2, ECF 159.)

The policies were issued by Jefferson-Pilot Life Insurance Company, which Lincoln subsequently acquired. (*Id.* at 3.) Life Settlement Corporation ("LSC"), doing business as Peachtree Life Settlements, purchased the policies on the secondary market. (Decl. Craig Lessner ("Lessner Decl.") ¶¶ 1–3, ECF 161-22.) LSC then resold the policies to some of the plaintiffs in this case. (Culbertson Decl. ¶ 2.)

LSC's legal team prepared "anti-fraud" memoranda concerning the policies it had acquired. (Lessner Decl. ¶¶ 2, 5.) The memoranda discussed whether the original applicants had disclosed all known medical conditions to Jefferson-Pilot before it issued the policies. *See* (Pls.' Opp'n Mot. Compel at 2, ECF 161-11); (Culbertson Decl., Ex. 2 (filed under seal)). According to Craig Lessner, LSC's former general counsel, these memoranda were prepared "to evaluate potential litigation risk, including the risk that Jefferson-Pilot might commence litigation claiming there were material misrepresentations in the policy applications." (Lessner Decl. ¶ 5.) These memoranda were produced before or immediately after LSC sold or assigned the policies to Plaintiffs. *See* (Def. Ex. 9A.) LSC shared the memoranda with the purchasing plaintiffs.

B

After Plaintiffs refused to produce unredacted copies of the anti-fraud memoranda, Lincoln moved to compel their production. Briefing and arguments before the Special Master were muddled by the parties' confusion regarding who prepared the documents and, accordingly, who could claim work product protection.

During the meet and confer process, Plaintiffs were under the impression that Peachtree Financial Solutions, LLC, had prepared the memoranda and that its successor, J.G. Wentworth, could assert work product protection over the documents. *See* (Pls.' Opp'n Mot. Compel at 3); (Decl. Brett N. Benton, ECF 161-16). In reality, however, the documents were prepared by another "Peachtree"—Peachtree Life Settlements, a subsidiary of Peachtree Financial Solutions officially named LSC. When J.G. Wentworth acquired Peachtree Financial Solutions in 2011, it did *not* acquire LSC. (Amendment No. 1 to Form S-1 Registration Statement at F-153, ECF 161-7 at 34.). Then, in 2014, LSC dissolved. (Articles of Dissolution, ECF 161-7 at 37); (Certificate of Dissolution, ECF 161-7 at 39).

The day before the Special Master held oral argument, the former general counsel of LSC submitted a declaration asserting that the documents were protected work product. *Compare* (Lessner Decl. ¶ 7) *with* (Op. & Order at 1).

Before the Special Master, Lincoln argued primarily that (1) no one had standing to assert work product protection over the anti-fraud memoranda and (2) LSC had waived work product protection when it shared the memoranda with Plaintiffs. (Mem. Supp. Mot. Compel at 6–7, ECF 161-5); (Reply Mem. Supp. Mot. Compel at 1–4, ECF 161–17); (Suppl. Mem. Supp. Mot. Compel at 1–2, ECF 161-19).

Plaintiffs contended that Lessner retained the authority to assert work product protection despite LSC's dissolution and that LSC did not waive work product production because the purchasing plaintiffs were not potential adversaries. (Opp'n Mot. Compel at 7–8, ECF 161-11); (Suppl. Submission Opp'n Mot. Compel at 1–2, ECF 160-22).

3

C

The Special Master rejected the argument that because LSC had dissolved long ago, no one had standing to assert the documents were protected work protect. In doing so, he noted that the "work product doctrine is distinct from and broader than the attorney-client privilege," and that its protection "belongs to the professional, rather than the client." (Op. & Order at 10 (first quoting *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975), then quoting *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 866 (3d Cir. 1994).) Accordingly, he found the policy considerations underlying the work-product doctrine supported allowing Lessner to assert it here. (*Id.* at 11.)

He also concluded LSC had not waived the work product protections when it shared the memoranda with Plaintiffs. In his view, Jefferson-Pilot, not Plaintiffs, was "the actual or putative adversary" at the time the memoranda were prepared. (*Id.* at 9.) Finally, he noted that Lincoln had not made the showing of substantial need necessary to overcome work-product protection. (*Id.* at 11 n.2.)

Lincoln renewed its standing and waiver arguments in objections to the Special Master's Opinion and Order. (Objs. Special Master's Op. & Order at 2–5, ECF 160.) It also contended the Special Master erred in not reviewing the memoranda *in camera* and in finding Lincoln had not shown a substantial need for the documents. (*Id.* at 4–5.)

II

Federal Rule of Civil Procedure 26(b)(3) provides that "documents and tangible things that are prepared in anticipation of litigation . . . by or for another party" are not discoverable. It partially codifies *Hickman v. Taylor*, 329 U.S. 495 (1947), the

4

foundation of the modern work product doctrine. There, the Supreme Court recognized that attorneys must enjoy "a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman*, 329 U.S. at 510. Under either Rule 26 or *Hickman*, the party invoking the work product doctrine has the burden of proving it applies. *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 277 (W.D. Pa. 2014).

By its terms, Rule 26(b)(3) applies only to parties and their representatives. *In re Student Fin. Corp.*, No. 02-11620, 2006 WL 3484387, at *7 (E.D. Pa. Nov. 29, 2006). Nevertheless, courts may limit non-party discovery based on the policy concerns underlying the doctrine. *See id.* at *10. In those situations, the work product doctrine may provide "good cause" to forbid discovery that would oppress or unduly burden the non-party. Fed. R. Civ. P. 26(c). *See Basinger v. Glacier Carriers*, Inc., 107 F.R.D. 771, 772 (M.D. Pa. 1985). Moreover, because Rule 26(b)(3) only partially codifies *Hickman*, it may provide protection to non-parties even where Rule 26 does not. *See Student Fin.*, 2006 WL 3484387, at *11; *cf. In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003) ("*Hickman v. Taylor* continues to furnish protection for work product within its definition.").

At the same time, however, "evidentiary privileges are to be strictly construed." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1429 (3d Cir. 1991). They should be applied "only when necessary to achieve their respective purposes." *In re Chevron Corp.*, 633 F.3d 153, 165 (3d Cir. 2011).

The purpose of the work product doctrine is to prevent "an attorney's work from falling into the hands of an adversary." *Chevron*, 633 F.3d at 165. The doctrine is "an

intensely practical one, grounded in the realities of litigation in our adversary system." *Nobles*, 422 U.S. at 238. It promotes and protects that system by "enabling attorneys to prepare cases without fear that their work product will be used against their clients." *Chevron*, 633 F.3d at 164 (quoting *Westinghouse*, 951 F.2d at 1428).

Put another way, the purpose of the doctrine "is not to protect the evidence from disclosure to the outside world but rather to protect it only from the knowledge of opposing counsel and his client, thereby preventing its use against the lawyer gathering the materials." 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2024 (3d. ed.) (citation omitted); *see also United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) ("The purpose of the work product doctrine is to protect information against opposing parties, rather than against all others outside a particular confidential relationship, in order to encourage effective trial preparation.").

### III

The work product doctrine does not permit the former general counsel of a long-defunct corporation to claim the doctrine's protections in the absence of any articulated risk of litigation against either corporation or counsel. The doctrine is "intensely practical." *Nobles*, 422 U.S. at 238 (1975). Its contours, like the doctrine itself, should be "grounded in the realities of litigation in our adversary system." *Id.* Accordingly, the doctrine should only offer protection to non-parties when doing so furthers the doctrine's purpose: preventing "opposing parties," "adversaries," and "opponents" from using a lawyer's work to his or his client's disadvantage. *Student Fin.*, 2006 WL 3484387, at *4 (quoting *Hickman*, 329 U.S. at 510); *In re Chevron Corp.*, 633 F.3d at 165; *Westinghouse*, 951 F.2d at 1429. A healthy adversary system" must "afford[]

protection to an attorney's trial preparation *as against actual and potential opponents*"—not against the entire world. *Westinghouse*, 951 F.2d at 1429 (quoting *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1375 (D.C. Cir. 1984)) (emphasis added).

Neither Plaintiffs nor Lessner explain what "opponents" LSC or its general counsel must be protected from. Neither are parties to this litigation, and there is no indication they will ever become parties. Nor is there any suggestion either is threatened by any other litigation related to the anti-fraud memoranda. Indeed, Plaintiffs never responded to Lincoln's contention that any claim against LSC or its directors, including Lessner, would be time-barred. *See* (Objs. Special Maters' Op. & Order at 2); (Suppl. Mem. Supp. Mot. Compel at 2).

Plaintiffs argue instead that "[w]hat matters is what the attorney subjectively believed at the time she or he prepared the document." (Pls' Resp. at 2.) But while the attorney's subjective belief is relevant to whether the document was prepared in "anticipation of litigation," *see Neidich v. Progressive Advanced Ins. Co.*, No. 17-5375, 2018 WL 4006397, at *1 (E.D. Pa. Aug. 22, 2018), it does not control whether a non-party can assert work product protection in a later case. Even if a document is work product that may in certain circumstances be entitled to protection, it does not promote the adversary system to continue protecting documents after all conceivable threats to the client have disappeared.

LSC's memoranda cannot be shielded absent a showing that the non-party asserting the privilege has a current or future interest in keeping the documents from adversaries. In previous cases extending the protections of the work product doctrine to non-parties, the non-parties had pressing economic and legal interests in the case or

7

related litigation. In *In re Student Finance Corp.*, for example, the Court held that a creditor in a bankruptcy action, though not a party, could assert work product protection. In doing so, it emphasized that the creditor was directly involved in the action, enjoyed "a measure of control over the litigation," and would receive a large portion of any money obtained in the proceeding. *Student Fin.*, 2006 WL 3484387, at *11. In addition, "there remained the possibility . . . that [the creditor] might become a party to the adversary action." *Id.* at *12. Because of the creditor's intimate involvement in the litigation and interest in its outcome, its "work product implicate[d] all the purposes for the privilege articulated in *Hickman*: preventing discovery from chilling attorneys' ability to formulate their legal theories and prepare their cases, preventing opponents from free-loading off their adversaries' preparation, and preventing disruption of ongoing litigation." *Id.*

Similarly, in *Serrano v. Chesapeake Appalachia*, the court denied a motion to enforce a subpoena against a non-party because it was possible the non-party would be responsible for indemnifying the defendant. 298 F.R.D. at 280. The work product the plaintiff sought was prepared by the non-party "against the backdrop" of its potential legal exposure. *Id.* Given the non-party's nexus to the litigation, the court determined denying the motion would have "a salutary effect on attorneys maintaining confidence that their ability to formulate and record legal theories and prepare their cases will not be used to the detriment of their clients." *Id.*

Finally, in *Basinger v. Glacier Carriers, Inc.*, a case involving a motorist killed in a collision shortly after leaving a restaurant, the court quashed a subpoena against the restaurant's liability insurer. Because the restaurant might be brought in as a third-

party defendant, the court concluded it would be unjust to deny its insurer the benefits of the work product doctrine. 107 F.R.D. at 722. Indeed, doing so would "permit a strategically delayed joinder to circumvent the purposes of Rule 26(b)(3)." [2] *Id.*

The common theme of these cases and others like them is that the non-party asserting the protection had an identifiable, articulated interest in the continued protection of the documents from potential adversaries. In those circumstances, extending the work product protection to non-parties was necessary to allow their lawyers to perform their duties "without fear that their work product [would] be used against their clients." *Chevron*, 633 F.3d at 164 (quoting *Westinghouse*, 951 F.2d at 1428). No similar need exists here. Plaintiffs have neither explained how a long-dissolved corporation or its former general counsel could possibly be impacted by the outcome of *this* litigation, nor articulated *any* potential litigation risk related to the anti-fraud memoranda that either attorney or client might face.

The Lessner Declaration, for example, did nothing more than "assert" that "the 'anti-fraud' legal memoranda are . . . protected by the work product doctrine." (Lessner Decl. ¶ 7.) It did not provide any reason why producing them in this litigation would be unjust, oppressive, or burdensome to him or former client. *See* Fed. R. Civ. P 26(c); *Basinger*, 107 F.R.D. at 772. In *Student Finance*, *Serrano*, and *Bassinger*, the non-parties themselves possessed the protected documents and resisted the subpoenas

---

[2] The only Third Circuit case to touch on the issue provides Plaintiffs even less support. In *United Coal Companies v. Powell Construction Co.*, 839 F.2d 958 (3d Cir. 1988), the Third Circuit held that the plaintiff's insurers could assert work product protection over certain materials sought be defendants. *Id.* at 967. In that case, the insurers were the real parties in interest and had ratified the plaintiff's suit. Accordingly it "was as if [the insurers] had been parties from the beginning of the action." *United Coal Companies*, 839 F.2d at 960. While the court cited *Basinger*, it ultimately concluded that the insurers were the plaintiff's "'representative[s]' for purposes of asserting the work product doctrine" and were covered by the language of Rule 26(b)(3) itself. *Id.* at 966–967.

9

against them. *See Student Fin.*, 2006 WL 3484387, at *1; *Serrano*, LLC, 298 F.R.D. at 276; *Basinger*, 107 F.R.D. at 771–72. Here, the person who ostensibly has standing to assert the privilege merely signed a seven-paragraph declaration. The "realities of litigation" reveal that LSC and Lessner's interests in this discovery dispute are imaginary. *Nobles*, 422 U.S. at 238.

IV

In holding that Lessner had standing to assert the memoranda were protected work product, the Special Master emphasized that the doctrine's protection "belongs to the professional, rather than the client." (Op. & Order at 10 (quoting *Rhone-Poulenc Rorer Inc.*, 32 F.3d 851, 866 (3d Cir. 1994).) While there may be situations where an attorney has an interest in asserting the privilege though his client does not, *cf. In re Grand Jury Proc.*, 604 F.2d 798, 801 n.4 (3d Cir. 1979), this is not one of them. Instead, a realistic appraisal of "the interests of lawyer and client" suggests Lessner retains no more interest in asserting the privilege than his former client. *Id.* at 801.

Plaintiffs cite two cases in which attorneys for a dissolved entity successfully asserted work product protection, but neither support their position. In one, the lawyers were defendants in the suit in which they asserted the protection. *Natural-Immunogenics Corp. v. Newport Trial Grp.*, No. 15-2034, 2018 WL 6137633, at *13 (C.D. Cal. Apr. 23, 2018). In the other, attorneys in a bankruptcy proceeding invoked the doctrine during a fee dispute after the creditors' committee they represented had ceased to exist. *In re JMP Newcor Int'l, Inc.*, 204 B.R. 963, 964 (Bankr. N.D. Ill. 1997). Accordingly, both were entitled to work product protection directly under Rule 26(b)(3). *See F.T.C. v. Grolier Inc.*, 462 U.S. 19, 25 (1983) ("the literal language of the Rule

protects materials prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation."). Here, neither LSC nor Lessner can claim protection under Rule 26. Any protection must be based on the policies underlying the doctrine.

Just as importantly, extending work product protection to the attorneys in *Natural-Immungenics* and *In re JMP Newcor International* was consistent with the purpose of the doctrine: preventing an adversary from using attorney work product "against the lawyer gathering the materials." Wright & Miller, *Federal Practice & Procedure* § 2024. The fact that a corporation is defunct may not bar *any* claim to work product protection after its dissolution, but it is certainty relevant to analyzing whether continued protection is necessary to effectuate the doctrine's purpose. The burden is on the party asserting the privilege to show it applies. *Serrano*, 298 F.R.D. at 277. More than seven years after the dissolution of LSC, there is no evidence LSC or Lessner could or would be disadvantaged by disclosing the memoranda to Lincoln.

Most significantly, there is no risk that permitting the production of the anti-fraud memoranda will chill Lessner or similarly situated attorneys in the performance of their work. As one court explained in rejecting a claim of attorney-client privilege on behalf of a defunct company, "the possibility that a corporation's management will hesitate to confide in legal counsel out of concern that such communication may become unprivileged after the corporation's demise is too remote and hypothetical to outweigh the countervailing policy considerations supporting discoverability." *Gilliland v. Geramita*, No. 2:05CV01059, 2006 WL 2642525, at *4 (W.D. Pa. Sept. 14, 2006). Similarly, the risk an attorney's work would be chilled by the possibility it might be

11

discoverable if the corporation were to dissolve and its work product became relevant to a lawsuit in which neither attorney nor client were parties is too speculative to justify applying the doctrine in perpetuity.  At minimum, there must be some showing the attorney's work may still be used "against" him or his clients.  *Chevron*, 633 F.3d at 164 (quoting *Westinghouse*, 951 F.2d at 1428).

V

Because Plaintiffs have not shown why, consistent with its purpose, Lessner or LSC may invoke the work product doctrine in this case, Plaintiffs must produce unredacted copies of the anti-fraud memoranda.  The Court need not consider Lincoln's other objections.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

12